DAVID A. HUBBERT
Deputy Assistant Attorney General

AMY MATCHISON (CA Bar No. 217022)
Trial Attorney
United States Department of Justice, Tax Division
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone:     (202) 307-6422
Fax:           (202) 307-0054
Email: Amy.T.Matchison@usdoj.gov
        Western.Taxcivil@usdoj.gov

*Attorneys for United States of America*

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

IN THE MATTER OF THE TAX
LIABILITIES OF:

JOHN DOES, United States person(s),
who directly or indirectly, were paid
through, by, or on behalf of JustAnswer
LLC, or its predecessors, subsidiaries,
divisions, or affiliates (collectively,
"JustAnswer"), $5,000 or more for
answering questions on the JustAnswer
Platform, in any one year, for the period
January 1, 2017, through December 31,
2020.

Civil Number:

**UNITED STATES'
MEMORANDUM IN SUPPORT OF
EX PARTE PETITION FOR
LEAVE TO SERVE "JOHN DOE"
SUMMONS**

# TABLE OF CONTENTS

Page(s)

I.      Introduction ..................................................................................................... 1

II.     Background ...................................................................................................... 1

        A.      The "Gig Economy" ............................................................................. 2

        B.      Tax Noncompliance and Individual Business Income ......................... 3

        C.      Tax Compliance & Information Reporting ........................................... 5

        D.      Expert Identity and Payment Information Held by JustAnswer ........... 6

        E.      Grounds for the IRS's Belief that Expert Payments Are Not Being Properly
                Reported  ............................................................................................... 7

                1.    Suspected Tax Non-Compliance by JustAnswer Experts ........... 7

                2.    The Lack of Third-Party Reporting to the IRS ............................ 9

III.    Law and Argument ......................................................................................... 10

        A.      Governing Law .................................................................................... 10

        B.      Application of § 7609(f) ..................................................................... 12

                1.    The Summons Relates to the Investigation of an Ascertainable
                      Class ......................................................................................... 12

                2.    There Is a Reasonable Basis for Believing that the John Doe
                      Class May Fail, or May Have Failed, to Comply with the
                      Internal Revenue Laws .............................................................. 15

                3.    The Information Sought in the Summons Is Not Readily
                      Available from Other Sources ................................................... 17

                4.    The Summons Is Narrowly Tailored to Information that Pertains
                      to the Failure (or Potential Failure) of the Class to Comply
                      with the Internal Revenue Laws ............................................... 18

IV.     Conclusion ..................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Does*,
   671 F.2d 977 (6th Cir. 1982) ............................................................................16

*Matter of Does*,
   Case No. CV-13-3393 YGR, 2013 WL 5503135 (N.D. Cal. Aug. 29, 2013) ................................................................................................14

*In re Tax Liab. of Does*,
   No. 03-22793-CIV, 2003 WL 22953182 (S.D. Fla. Oct. 30, 2003)..................14

*In re Tax Liab. of Does*,
   No. 2:10-mc-00130-MCE-EFB, 2011 WL 6302284 (E.D. Cal. Dec. 15, 2011) ...........................................................................................14

*In Matter of Tax Liabilities of Does*,
   Civ. No. 3:96-CV-25(DF), 1996 WL 196633 (M.D. Ga. Feb. 5, 1996) ...........14

*In re Tax Liability of John Does*,
   No. 21-cv-02201-JCS, 2021 WL 2314968 (N.D. Cal. May 5, 2021) ...13, 17, 18

*In re Tax Liabs. of Does*,
   688 F.2d 144 (2d Cir. 1982) ............................................................................16

*In re Tax Liabs. of Does*,
   No. 11-cv-01686-PJH, Dkt. No. 10 (N.D. Cal. Apr. 7, 2011)............................18

*In the Matter of the Tax Liabilities of John Does*,
   No. 2:22-cv-05715-ODW, ECF No. 11 (C.D. Cal. Aug. 15, 2022) ......13, 17, 18

*In the Matter of the Tax Liabilities of John Does*,
   No. 21-mc-91201-RGS, 2021 WL 2291031 (D. Mass. Apr. 1, 2021) ..13, 17, 18

*Tiffany Fine Arts, Inc. v. United States*,
   469 U.S. 310 (1985)........................................................................................11

*United States v. Arthur Young & Co.*,
   465 U.S. 805 (1984)........................................................................................11

*United States v. Bell*,
   57 F. Supp. 2d 898 (N.D. Cal. 1999) ................................................................10

*United States v. Burke*,
   504 U.S. 229 (1992) ........................................................................................15

*United States v. Ernst & Whinney*,
   750 F.2d 516 (6th Cir. 1984) ...........................................................................11

*United States v. Euge*,
   444 U.S. 707 (1980) ........................................................................................10

*United States v. Gertner*,
   65 F.3d 963 (1st Cir. 1995) .............................................................................11

*United States v. John Doe*,
   No. 3:16-cv-06658-JSC, ECF No. 7 (N.D. Cal. Nov. 30, 2016) ...............14, 18

*United States v. Jose*,
   131 F.3d 1325 (9th Cir. 1997) .........................................................................10

*United States v. Pittsburgh Trade Exch., Inc.*,
   644 F.2d 302 (3d Cir. 1981) ............................................................................16

*United States v. Ritchie*,
   15 F.3d 592 (6th Cir. 1994) .......................................................................15, 16

**Statutes**

26 U.S.C. § 61(a) ................................................................................................15

26 U.S.C. § 7601(a) ............................................................................................10

26 U.S.C. § 7602(a) ............................................................................................10

26 U.S.C. § 7609 ................................................................................................11

26 U.S.C. § 7609(f) ........................................................................................*passim*

26 U.S.C. § 7609(h)(2) .......................................................................................11

26 U.S.C. § 7701(a)(30) .....................................................................................13

**Other Authorities**

H.R. Rep. No. 94-658 (1975), *reprinted in* 1976 U.S.C.C.A.N. 2897 ................... 15

H.R. Rep No. 116-39 (2019) ...................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The United States of America submits this memorandum in support of its ex parte petition for an order approving the service of an Internal Revenue Service John Doe summons on JustAnswer LLC ("JustAnswer").  A copy of the summons and summons attachment (listing the items requested) are filed herewith, as well as a proposed order, Declaration of John Wood (hereinafter "Declaration") and supporting exhibits.

## I.    INTRODUCTION

The number of U.S. persons who receive compensation for providing goods and services through technology platforms has grown in recent years, and the IRS is concerned that taxpayers are not properly reporting income on their tax returns. Accordingly, the IRS seeks leave to serve the proposed summons in furtherance of an ongoing investigation to determine the identity and correct federal income tax liability of U.S. persons who have received payments from JustAnswer for having answered questions on JustAnswer.com as experts.  *See* Declaration ¶¶ 8, 45.  The summons seeks account and payment records from JustAnswer that are expected to aid the IRS's investigation.

The summons is a so-called "John Doe" summons because it does not identify the persons with respect to whose liabilities the summons is issued.  *See generally* 26 U.S.C. § 7609(f).  The government therefore must obtain court approval before serving the summons.  *Id.*  As discussed below, the statutory criteria for court approval of a John Doe summons are met.

Pursuant to 26 U.S.C. § 7609(h)(2), a court's determination whether a John Doe summons may be served is to be made ex parte based solely on the petition and supporting affidavits.  The pleadings filed in this proceeding will therefore not be served on any person or entity, and no other filings are permitted from other persons or entities. The United States respectfully asks the Court to review the petition and supporting documents and enter the proposed order at the Court's earliest opportunity.

## II.    BACKGROUND

The summons seeks account and payment records from JustAnswer regarding a

group of its experts whose identities are not known to the IRS ("John Does").  The group of John Does is defined as follows: United States person(s), who directly or indirectly were paid through, by, or on behalf of JustAnswer LLC, or its predecessors, subsidiaries, divisions, or affiliates (collectively, "JustAnswer"), $5,000 or more for answering questions on the JustAnswer Platform, in any one year, for the period January 1, 2017, through December 31, 2020 ("John Doe Class").  The five document requests in the summons are directed at two categories: expert identity information and payment activity. Issuance of the summons is warranted because (i) it relates to the investigation of an ascertainable group or class of persons—U.S. taxpayer-experts for JustAnswer; (ii) as detailed below, there is a reasonable basis for believing these U.S. taxpayers may fail or may have failed to comply with the U.S. internal revenue laws; and (iii) information sufficient to establish these U.S. taxpayers' identities is not readily available to the IRS from other sources.  *See* 26 U.S.C. § 7609(f).

Additionally, issuance of the summons is justified because the information sought is narrowly tailored to information that pertains to the failure (or potential failure) of U.S. taxpayer-experts for JustAnswer to comply with internal revenue laws.  *Id.*

## A.    The "Gig Economy"

The gig economy—otherwise referred to as the sharing economy, platform economy, access economy, or on-demand economy—is described by the IRS as "activity where people earn income providing on-demand work, services or goods. Often, it's through a digital platform like an app or website."  Declaration ¶ 32.  The gig economy is a recent phenomenon associated with the increased prevalence of smart phones and their applications beginning around 2008, facilitating the development of online marketplaces and platforms in which individuals can connect to obtain and offer goods and services. *Id.* ¶ 33.  Digital platforms, including websites and apps, commonly serve as intermediaries, directly connecting sellers and service providers with consumers and processing payments.  Well-known examples of such platforms include Airbnb, Uber, Lyft, DoorDash, Etsy, Handy, and TaskRabbit.  *Id.* ¶ 34.

In 2016, available studies revealed that up to 45 million Americans had offered some good or service sometime in the gig economy and that likely more than 2.5 million Americans were participating in the gig economy. *Id.* ¶ 35. A more recent study conducted in 2021 estimated that about 16 percent of adult Americans have earned money by doing gig platform work and about 9 percent of adult Americans were current or recent gig workers. *Id.* ¶ 36. Despite the difficulties in precisely measuring the size of the gig economy and the number of participants, the studies agree that the gig economy is expected to grow in the years to come.

The summons at issue here is directed at investigating activity in the gig economy. The JustAnswer Platform consists of the website, JustAnswer.com, and associated websites and applications through which members of the public ("Customers") can post questions about various topics, which are answered by professionals ("Experts"), such as doctors, lawyers, veterinarians, engineers, and tax professionals.

Customers are charged a fee to join the JustAnswer Platform plus a per-question fee or a monthly subscription fee. *Id.* ¶ 57. JustAnswer pays a portion of the customer fees to the Experts and retains the rest. *Id.* ¶ 59. The IRS is investigating whether the Experts are complying with internal revenue laws and reporting the portion of the customer fees they receive as income.

### B.    Tax Noncompliance and Individual Business Income

Individual business income is income earned by a sole proprietorship — an unincorporated business carried on by an individual. *Id.* ¶ 10. A sole proprietor files a Schedule C (Profit or Loss from Business (Sole Proprietorship)) with his or her individual income tax return, Form 1040, to report income and claim deductions for expenses incurred in carrying on the business. *Id.* A sole proprietor with net earnings from self-employment of $400 of more must also file a self-employment tax return, Schedule SE, and pay self-employment taxes. *Id.* The Experts answering questions on the JustAnswer Platform are sole proprietors and the payments they receive are considered individual business income under the internal revenue laws. *Id.* ¶ 64.

When there is limited third-party information reporting of the individual business income earned by a sole proprietor to the IRS, there can be an opportunity to underreport income.  Overall tax noncompliance is measured by the so-called "tax gap," which is "the amount of tax liability for a given tax year that is not paid voluntarily and timely."  *Id.* ¶ 12.  The gross tax gap is divided into three components:

> a)  Nonfiling (tax not paid on time by those who did not file required returns on time);
>
> b)  Underreporting (tax understated on timely filed returns); and
>
> c)  Underpayment (tax reported on time but not paid on time).

*Id.*  The IRS projects that, for the tax years 2017 through 2019, the gross tax gap was an average of $540 billion per year, with $41 billion attributable to nonfiling, $433 billion attributable to underreporting, and $66 billion attributable to underpayment.  *Id.* ¶ 13.  For 2014 through 2016, underreported individual business income was estimated to be the largest contributor to the gross tax gap.  *Id.* ¶ 14.

The IRS has known about tax noncompliance issues associated with the underreporting of individual business income for decades.  In April 1996, the IRS published a report ("1996 IRS Report") finding that the underreporting of two items of individual business income (non-farm proprietor income and informal supplier income) accounted for an estimated total of $78.4 billion in lost tax revenue for the three tax years 1985, 1988, and 1992, comprising about 31.8 percent of the total estimated gross tax gap.  *Id.* ¶ 16.  The 1996 IRS Report reflected that unreported individual business income is the largest component of the tax gap.  *Id*.  Subsequent research conducted by the IRS through October 2022 confirmed that individual business income is the largest contributor to the tax gap.  For 2020 and 2021, the IRS projects underreporting of individual business income to be $158 billion and $182 billion, representing 26 percent of the gross tax gap.  *Id.* ¶ 18.  These figures do not include the self-employment tax underreporting associated with the underreported individual business income, nor do they include the income or self-employment tax attributable to nonfiling.  *Id.* ¶ 19.

Together with the sheer magnitude of the portion of the tax gap attributable to underreported and unreported individual business income, the rate of noncompliance for this category of income is a significant aspect of the tax noncompliance issue. To measure the level of reporting noncompliance for a particular return line item of income, the IRS uses the net misreported amount ("NMA") and the net misreporting percentage ("NMP"). *Id.* ¶ 21. The NMA is the dollar amount of misreporting for the given line item. *Id.* The NMP is the net reported amount as a percentage of the amounts that should have been reported. *Id.* For example, if the gross receipts of a self-employed taxpayer were reported on the tax return as $60, but the taxpayer received, and should have reported, gross receipts of $100, the NMA would be $40 ($100 that should have been reported less $60 reported) and the NMP would be 40 percent ($40 over $100 that should have been reported). *Id.* ¶ 22.

The IRS has estimated that nonfarm proprietor income (income from sole proprietorships, partnerships, and other private nonfarm businesses that are organized for profit but that are not classified as corporations), the largest item of individual business income, had NMPs of:

     a) 57.1 percent for the tax year 2001;

     b) 64 percent for the tax years 2008 through 2010;

     c) 56 percent for the tax years 2001 through 2013; and

     d) 57 percent for the tax years 2014 through 2016.

*Id.* ¶ 23. In terms of its absolute share of the tax gap and the level of misreporting, the underreporting of individual business income is one of the IRS's most significant compliance issues.

### C.    Tax Compliance & Information Reporting

The IRS's research shows that the significant level of noncompliance associated with individual business income is not a coincidence; it results from the lack of sufficient third-party information reporting associated with individual business income. *Id.* ¶ 26. Common sense dictates that a taxpayer who performs services for clients and receives a

Form 1099 that is filed with the IRS is more likely to report the income on his or her tax return than a taxpayer who does not receive Form 1099.  But the degree of misreporting between these two hypothetical categories of taxpayers is substantial.  *Id.* ¶ 27.

Beginning in 2007, the IRS has been analyzing NMPs by grouping items of income based on the level of information reporting and whether income tax withholding is required.  *Id.* ¶ 28.  In each research report, the IRS has concluded that for the individual income tax, reporting compliance is far higher when income items are subject to information reporting and even higher when also subject to withholding.  *Id.*  For items of income subject to substantial information reporting and withholding, the net misreporting rate is about 1 percent.  *Id.* ¶ 30.  In sharp contrast, for amounts subject to little or no information reporting and no withholding (which is the situation with the John Doe class), the net misreporting rates have been estimated to range between 53.9 and 63 percent.  *Id.*  The information reporting gap is a key driver of tax noncompliance of individual business income.

### D.     Expert Identity and Payment Information Held by JustAnswer

The JustAnswer Platform consists of the website, JustAnswer.com, and mobile apps available for Customers (JustAnswer app) and Experts (JustAnswer: Experts), on which Customers pose questions on various topics for a fee, which Experts answer.  *Id.* ¶ 56.  Customers create accounts on the JustAnswer Platform and are charged a fee to join, plus pay a monthly subscription fee which varies depending on the subject for which the Customer would like to ask questions.  Alternatively, Customers can pay per question.  *Id.* ¶ 57.

To become an Expert, an individual completes an online application in which identifying information, including legal name, address, telephone number, email address, Social Security number, government issued identification, and relevant licenses or certifications are provided.  *Id.* ¶ 58.  The JustAnswer Platform uses a third-party verification service to check the applicant's credentials, which JustAnswer.com represents takes a few days.  *Id.*  Once approved, the Expert can begin answering

questions on the JustAnswer Platform. Experts are paid on a per-question-answered basis. The payment for each answer depends on the pricing model the Customer uses, the Expert's designated pricing tier, the Customer's rating of the answer, and the question value determined by JustAnswer. *Id.* ¶ 59. Experts also receive bonuses paid by JustAnswer as part of its Question Incentive Program or from Customers as a Customer Paid Bonus (subject to 3 percent retention by JustAnswer). *Id.*

### E. Grounds for the IRS's Belief that Expert Payments Are Not Being Properly Reported

The IRS has learned of significant tax compliance issues relating to gig-economy activity. Of relevance, the IRS has reason to believe that amounts paid to JustAnswer Experts for answering questions are not being properly reported based on Agent Wood's knowledge about likely tax non-compliance by specific JustAnswer Experts; the lack of third-party reporting in connection with such payments; and internal IRS data.

#### 1. Suspected Tax Non-Compliance by JustAnswer Experts

As explained in detail in the Declaration, Agent Wood has investigated and identified specific Experts who have answered questions for and been paid by JustAnswer and may have failed to comply with their tax reporting requirements under the internal revenue laws. *Id.* ¶¶ 69-71. Five specific taxpayers— referred to as "Taxpayer 1" through "Taxpayer 5"—are discussed in the Declaration.

In 2020, Taxpayer 1 entered the IRS's Voluntary Disclosure Practice ("VDP"). VDP is a process through which taxpayers who have willfully failed to comply with tax or tax-related obligations may submit a voluntary disclosure to resolve their non-compliance and limit exposure to criminal prosecution. Taxpayer 1 disclosed the receipt of over $100,000 per year in income from answering questions as an Expert on the JustAnswer Platform for the tax years 2013 through 2016 that had not been reported on Taxpayer's 1 income tax returns. Taxpayer 1's failure to report income from JustAnswer resulted in a total understatement of Taxpayer 1's true tax liabilities for tax years 2013 through 2016 of over $180,000. During the examination process, Taxpayer 1 confirmed

that JustAnswer paid Taxpayer 1 exclusively through PayPal and that Taxpayer 1 did not receive any Form 1099 reporting the compensation from JustAnswer or PayPal. Taxpayer 1's noncompliance was limited to the income earned from JustAnswer and the lack of third-party information reporting enabled Taxpayer 1 to omit the JustAnswer income from the tax returns without detection by the IRS. *Id.* ¶¶ 73-77.

Taxpayer 2 has been answering questions for JustAnswer since 2011. In 2017, 2018, 2019, and 2020, Taxpayer 2 answered over 6,000, 13,000, 23,000, and 44,000 questions, respectively. Based on Taxpayer 2's number of questions answered and customer satisfaction rating, Taxpayer 2 likely earned more than $90,000, $195,000, $345,000, and $660,000, of income from JustAnswer for the tax years 2017, 2018, 2019, and 2020. Although Taxpayer 2's income tax returns for the tax years 2017 through 2020 include a Schedules C, they describe activity relating to online sales, rather than services, and report substantial costs of goods sold characteristic of the sale of products and other expenses which would not be characteristic of expenses incurred by an Expert answering questions. *Id.* ¶¶ 86-89.

Taxpayer 3 has been answering questions for JustAnswer since 2016. In 2017, 2018, and 2019, Taxpayer 3 answered over 1,500, 7,000, and 11,000 questions, respectively. Based on Taxpayer 3's number of questions answered and customer satisfaction rating, Taxpayer 3 likely earned more than $22,500, $105,000, and $165,000, of income from JustAnswer for the tax years 2017, 2018, and 2019. Taxpayer 3's 2017- and 2018 income tax returns do not include a Schedule C or Schedule SE or any other indication that Taxpayer 3 reported income from JustAnswer. For tax year 2019, Taxpayer 3 reported income on a Schedule C about $32,000 below Taxpayer 3's estimated income from JustAnswer. *Id.* ¶¶ 91-96.

Taxpayer 4 has been answering questions for JustAnswer since 2016. In 2017, 2018, 2019, and 2020, Taxpayer 4 answered over 5,000, 4,000, 4,000, and 5,000 questions, respectively. Based on Taxpayer 4's number of questions answered and customer satisfaction rating, Taxpayer 4 likely earned more than $75,000, $60,000,

$60,000, and $75,000, of income from JustAnswer for the tax years 2017, 2018, 2019, and 2020. Taxpayer 4 did not file income tax returns for tax years 2017, 2018, and 2020. Taxpayer 4 filed an income tax return for tax year 2019 reporting nominal interest income as the only source of income. *Id.* ¶¶ 98-101.

Taxpayer 5 has been answering questions for JustAnswer since 2016. In 2018, 2019, and 2020, Taxpayer 5 answered over 500 questions each year for JustAnswer. Based on Taxpayer 5's number of questions answered and customer satisfaction rating, Taxpayer 5 likely earned more than $37,500 of income from JustAnswer in each of the tax years 2018, 2019, and 2020. Taxpayer 5 did not file an income tax return for tax years 2018 and 2020. Taxpayer 5 filed an income tax return for tax year 2019 reporting nominal interest income as the only source of income. *Id.* ¶¶ 103-106.

Based on these examples, the IRS suspects that there may be many more JustAnswer Experts who have failed to report the income they received from answering questions, and to pay their associated tax liabilities, in accordance with the internal revenue laws.

### 2. The Lack of Third-Party Reporting to the IRS

For the years at issue, JustAnswer did not make any third-party reports to the IRS of payment activity that occurred through its platform. *Id.* ¶ 66; *see also id.* ¶ 124 (stating that the IRS does not already possess the information requested by the summons). This information gap concerns the IRS because, as Agent Wood's Declaration explains, underreported and unreported individual business income is central to the tax gap and the rate of noncompliance for this category of income is a consequential aspect of the tax noncompliance issue.

More generally and as explained (see *infra* at 5-6), the IRS's experience is that tax noncompliance increases when there is less third-party information reporting, making the likelihood of underreporting significant.

## III.   LAW AND ARGUMENT

### A.   Governing Law

The IRS is statutorily required to have its employees "proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." 26 U.S.C. § 7601(a). To this end, the IRS has broad investigative powers "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability." *Id.* § 7602(a). To fulfill these purposes, the IRS "is authorized" by statute:

> (1)   To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2)   To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
>
> (3)   To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

*Id.* Congress intended "to provide the [IRS] with broad latitude to adopt enforcement techniques helpful in the performance of [its] tax collection and assessment responsibilities." *United States v. Euge*, 444 U.S. 707, 716 n.9 (1980); *see also United States v. Jose*, 131 F.3d 1325, 1329 (9th Cir. 1997); *United States v. Bell*, 57 F. Supp. 2d 898, 906 (N.D. Cal. 1999) ("The IRS has broad investigatory powers that are set forth in §§ 7601 through 7610 of the Internal Revenue Code."). Indeed, the Supreme Court has noted that the IRS's summons power forms the "centerpiece" of the agency's "expansive

information-gathering authority." *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984).

When issuing an administrative summons to a third party regarding a taxpayer, the IRS is generally required to give notice to the taxpayer. 26 U.S.C. § 7609(a)(1). The taxpayer then has the right to file a petition in court seeking to quash the summons. *Id.* § 7609(b)(2)(A). But the third-party notice rules do not apply to some summonses, including a so-called "John Doe" summons, *see id.* § 7609(c)(3), defined as a summons that "does not identify the person with respect to whose liability the summons is issued," *id.* § 7609(f). Instead, a John Doe summons "may be served only after a court proceeding" establishing the elements listed in § 7609(f). *Id.* This proceeding is necessarily ex parte because the point of a John Doe summons is to allow the IRS to obtain information when the identity of the taxpayer is unknown. *See id.* § 7609(h)(2) (stating that the court's determination under § 7609(f) "shall be made ex parte and shall be made solely on the petition and supporting affidavits").

The reviewing court, in such an ex parte proceeding, effectively serves the same function as a taxpayer in a § 7609(b)(2)(A) petition to quash. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 317 (1985) ("As a substitute for the procedures of §§ 7609(a) and (b), Congress enacted § 7609(f)[.]"); *United States v. Gertner*, 65 F.3d 963, 965 n.1 (1st Cir. 1995) ("[T]he court in effect 'takes the place of the affected taxpayer' who, being unnamed, cannot herself be expected to know about—let alone to oppose—the summons even if it is irregular." (quoting *Tiffany Fine Arts*, 469 U.S. at 321)). "Congress did not intend to impose stringent restrictions on the [IRS's] investigatory function but merely sought to prevent the indiscriminate exercise of the John Doe summons power." *United States v. Ernst & Whinney*, 750 F.2d 516, 519-20 (6th Cir. 1984) (internal quotation marks and emphasis omitted).

Section 7609(f) provides that the IRS may not serve a John Doe summons until after a court proceeding in which the government establishes these three numbered elements:

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f).  Additionally, as of 2019, the statute requires that the summons be "narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph."  *Id.*

## B.    Application of § 7609(f)

The summons at issue meets all three of the numbered criteria in § 7609(f) as well as the "narrowly tailored" requirement.

### 1.    *The Summons Relates to the Investigation of an Ascertainable Class*

The first of the three numbered requirements in § 7609(f) is that "the summons relates to the investigation of a particular person or ascertainable group or class of persons."  *Id.* § 7609(f)(1).  This first prong is met here because the John Doe Class is particularized from the public and JustAnswer has the information necessary to ascertain whether its customers are members of the class.

As noted above, the summons defines the John Doe Class as follows: United States person(s), who directly or indirectly were paid through, by, or on behalf of JustAnswer LLC, or its predecessors, subsidiaries, divisions, or affiliates (collectively, "JustAnswer"), $5,000 or more for answering questions on the JustAnswer Platform for the period January 1, 2017, through December 31, 2020.  This class is ascertainable because it is limited in at least four ways.  First, it is limited to JustAnswer Expert

account holders.  Second, it is limited to United States persons.[1]  Third, it is limited to Experts who were paid $5,000 or more.  Fourth, it is limited to the four-year period of 2017 through 2020.

Moreover, the John Doe Class identified in the summons is "ascertainable" because courts have repeatedly found § 7609(f)(1) to be satisfied where a summons identifies a particular group of taxpayers similarly.  *In the Matter of the Tax Liabilities of John Does*, No. 2:22-cv-05715-ODW, ECF No. 11, (C.D. Cal. Aug. 15, 2022) (ascertainable class was United States person(s), who directly or indirectly had authority over any combination of accounts held with Ox Labs Inc., with at least the equivalent of $20,000 in value of transactions (regardless of type) in cryptocurrency in any one year, during 2016 through 2020); *In re Tax Liability of John Does*, No. 21-cv-02201-JCS, 2021 WL 2314968, at *1 (N.D. Cal. May 5, 2021) (ascertainable class was United States person(s), who directly or indirectly had authority over any combination of accounts held with Payward Ventures Inc., with at least the equivalent of $20,000 in value of transactions (regardless of type) in cryptocurrency in any one year, during 2016 through 2020); *In the Matter of the Tax Liabilities of John Does*, No. 21-mc-91201-RGS, 2021 WL 2291031, at *1 (D. Mass. Apr. 1, 2021) (ascertainable class was United States

---

[1] "As defined in the Internal Revenue Code:

The term 'United States person' means—
(A) a citizen or resident of the United States,
(B) a domestic partnership,
(C) a domestic corporation,
(D) any estate (other than a foreign estate, within the meaning of paragraph (31)), and
(E) any trust if—
    (i) a court within the United States is able to exercise primary supervision over the administration of the trust, and
    (ii) one or more United States persons have the authority to control all substantial decisions of the trust."
26 U.S.C. § 7701(a)(30).

person(s), who directly or indirectly had authority over any combination of accounts held with Circle Internet Financial, Inc., with at least the equivalent of $20,000 in value of transactions (regardless of type) in cryptocurrency in any one year, during 2016 through 2020); *United States v. John Doe*, No. 3:16-cv-06658-JSC, ECF No. 7 (N.D. Cal. Nov. 30, 2016) (United States persons who, at any time during 2013 through 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21).

This requirement has also been satisfied where a summons "squarely particularize[d] the individuals sought from the general public" by identifying the class as California residents who, between 2005 and 2010, participated in certain property transfers for little or no consideration. *See In re Tax Liab. of Does*, No. 2:10-mc-00130-MCE-EFB, 2011 WL 6302284, at *2 (E.D. Cal. Dec. 15, 2011). Likewise, the IRS satisfied the "ascertainable group" standard where a summons concerned U.S. taxpayers who, as agents for subsidiaries of a certain company, sold credit insurance policies reinsured with entities in the Turks and Caicos Islands. *See In re Tax Liab. of Does*, No. 03-22793-CIV, 2003 WL 22953182, at *1 (S.D. Fla. Oct. 30, 2003) ("*American Bankers Insurance Group*"); *see also Matter of Does*, Case No. CV-13-3393 YGR, 2013 WL 5503135 (N.D. Cal. Aug. 29, 2013) (approving John Doe class of U.S. taxpayers who had accounts with CIBC First Caribbean International Bank Limited through correspondent account at Wells Fargo Bank, N.A., during 2004-2012); *In Matter of Tax Liabilities of Does*, Civ. No. 3:96-CV-25(DF), 1996 WL 196633, at *1 (M.D. Ga. Feb. 5, 1996) ("As required by 26 U.S.C. § 7609(f)(1), the summons relates to the investigation of an ascertainable group or class of persons, that is, individuals, businesses, corporations, partnerships, joint ventures, and companies within the State of Georgia that received payments from The Loef Company, for the sale of recyclable materials, (also referred to as scrap metal), including commissions, for the calendar years 1992, 1993 and 1994.").

Moreover, as discussed in Part II.D above, JustAnswer should be able to determine from its records which of its Experts were U.S persons, and who among them were paid

1  $5,000 or more for answering questions during the years specified in the summons, based

2  on the information that the IRS expects it collects from its Experts.  The availability of

3  this information to JustAnswer means that the John Doe Class is an "ascertainable group

4  of class of persons" and that § 7609(f)(1) is satisfied.

5          2.      *There Is a Reasonable Basis for Believing that the John Doe Class*
                   *May Fail, or May Have Failed, to Comply with the Internal Revenue*
6                  *Laws*

7          The second element that the government must establish is that "there is a

8  reasonable basis for believing that such person or group or class of persons may fail or

9  may have failed to comply with any provision of any internal revenue law."  26 U.S.C.

10  § 7609(f)(2).  Under 26 U.S.C. § 61(a) gross income means all income from whatever

11  source derived.  The term "income" "sweeps broadly" and encompasses "any accession

12  to wealth." *United States v. Burke*, 504 U.S. 229, 233 (1992).  Here, there is a reasonable

13  basis for believing that members of the John Doe Class may fail (or may have failed) to

14  report, or to pay tax associated with, the payments they received from JustAnswer.  This

15  belief is based on the information discussed in Part II.E above: Agent Wood's personal

16  knowledge of non-compliance by JustAnswer Experts; and the lack of third-party

17  reporting to the IRS by JustAnswer regarding payments made to its Experts.

18          To meet the "reasonable basis" prong of § 7609(f)(2), the government need only

19  show that a transaction has occurred that is "of such a nature as to be reasonabl[y]

20  suggestive of the possibility that the correct tax liability with respect to that transaction

21  may not have been reported."  H.R. Rep. No. 94-658 at 311 (1975), *reprinted in* 1976

22  U.S.C.C.A.N. 2897, 3208; *see, e.g.*, *United States v. Ritchie*, 15 F.3d 592, 601 (6th Cir.

23  1994) (clients' payment for legal services with large amounts of cash provided reasonable

24  basis for John Doe summons).  When enacting § 7609(f), Congress did "not intend to

25  impose an undue burden on the [IRS] in connection with obtaining a court authorization

26  to serve this type of summons."  H.R. Rep. No. 94-658 at 311, *reprinted in* 1976

27  U.S.C.C.A.N. at 3207.  Rather, it sought to ensure that the IRS would have "a specific

28  situation to present in the court," rather than using the summonses to engage in a

"possible 'fishing expedition.'"  *Id.*; *see also In re Tax Liabs. of Does*, 688 F.2d 144, 149
(2d Cir. 1982) (Section 7609(f) was "concerned only with . . . preclud[ing] the IRS from
using [John Doe] summonses to engage in possible 'fishing expeditions.'" (quoting H.R.
Rep. No. 94-658 at 311)).  The government need not "produce conclusive evidence of an
actual tax violation as a prerequisite to obtaining a John Doe summons."  *In re Does*, 671
F.2d 977, 980 (6th Cir. 1982) (per curiam) ("*Columbus Trade Exchange*").  The point of
the statute is merely "to prevent the [IRS] from exercising its summons power in an
arbitrary or quixotic manner."  *Id.*

The evidence the IRS has developed to date shows that Experts answering
questions for JustAnswer are failing to report or are underreporting the income they have
received from JustAnswer.  Declaration ¶¶ 69-71.  Agent Wood is personally aware of
several instances of unreported income or likely unreported income involving JustAnswer
Experts.  *Id.* ¶¶ 73-77, 86-106.  The IRS also knows that when third-party reporting is
lacking, the incidence of tax non-compliance skyrockets.  And JustAnswer did not issue
Forms 1099 or otherwise engage in third-party transactional reporting to the IRS during
2017 through 2020.  Thus, the IRS has reason to believe that JustAnswer Experts have
failed to comply with internal revenue laws in reporting their income.

This belief is sufficient for the IRS to satisfy the "reasonable basis" requirement of
§ 7609(f).  Courts have found that this prong is met if the IRS knows about similar past
transactions that were associated with taxpayers failing to comply with the internal
revenue laws.  *See In re Columbus Trade Exchange*, 671 F.2d at 980 (the IRS had a
reasonable basis to investigate the tax returns of members of a particular barter exchange
based on the fact that, in the IRS's experience, members of other barter exchanges had
historically exhibited many reporting errors in reporting non-cash transactions on their
tax returns); *United States v. Pittsburgh Trade Exch., Inc.*, 644 F.2d 302, 306 (3d Cir.
1981) (IRS agent's testimony that transactions of the type the summoned party arranged
for its clients were "inherently susceptible . . . to tax error" was sufficient to meet the
"reasonable basis" prong); *see also United States v. Ritchie*, 15 F.3d 592, 601 (6th Cir.

1994) (clients' payment for legal services with large amounts of cash provided a
reasonable basis to issue a John Doe summons).[2]

Likewise, here, the IRS believes—based on its experience and the evidence
developed to date—that U.S. taxpayers who have earned income as JustAnswer Experts
are not complying with the internal revenue laws.  This informed belief provides the IRS
with a reasonable basis to believe that the John Doe class of U.S. taxpayers for whose
information it now seeks to summons "may have failed to comply with any internal
revenue law."  26 U.S.C. § 7609(f).  The "reasonable basis" prong of § 7609(f)(2) is
therefore satisfied.

3.    *The Information Sought in the Summons Is Not Readily Available
      from Other Sources*

The third numbered requirement of § 7609(f) is that "the information sought to be
obtained from the examination of the records or testimony (and the identity of the person
or persons with respect to whose liability the summons is issued) is not readily available
from other sources."  This prong is met because the information sought in the summons
to JustAnswer is not readily available to the IRS from other sources.  As noted above,
there is no third-party reporting by JustAnswer to the IRS regarding the payments it made
to its Experts during 2017 through 2020.  Declaration ¶ 66.  The IRS also has reason to
believe that many payments are not being properly reported by the Experts themselves
either, but the IRS is presently unable to audit such Experts because their identities are
unknown.

---

[2] In recent John Doe summons cases involving cryptocurrency transactions, the reviewing
district courts found that there was a reasonable basis for believing that similarly defined
classes had failed or may have failed to comply with internal revenue laws based on
similar evidence to that presented here.  *Does*, No. 2:22-cv-05715-ODW, ECF No. 11;
*Does*, 2021 WL 2291031, at *1; *Does*, 2021 WL 2314968, at *1.  In those cases, the lack
of third-party reporting to the IRS of taxpayer transactions in cryptocurrency contributed
to the lack of taxpayer compliance with the proper reporting of gains and losses from
cryptocurrency transactions.

Where, as here, the IRS cannot identify the members of the John Doe Class, and one of the principal purposes of the summons is to discover the class members' identities, courts have repeatedly found the § 7609(f)(3) prong of the test to be satisfied.  As in the recent John Does summons cases for cryptocurrency-related information.  *Does*, No. 2:22-cv-05715-ODW, ECF No. 11; *Does*, 2021 WL 2291031, at *1; *Does*, 2021 WL 2314968, at *1; *John Doe*, No. 3:16-cv-06658-JSC, ECF No. 7.  Other examples include where courts have approved summonses where the identities of the persons to be investigated are not readily available but are known to foreign institutions.  *See In re Tax Liabs. of Does*, No. 11-cv-01686-PJH, Dkt. No. 10 (N.D. Cal. Apr. 7, 2011) (authorizing John Doe summons to HSBC Bank USA, N.A. seeking financial account records establishing the identities of U.S. taxpayers with interests in HSBC's Indian bank accounts); *MasterCard International, Inc.*, 2002 WL 32879613, at *1 (authorizing service of a John Doe summons seeking the identity of U.S. taxpayers who held certain credit card accounts with ties to foreign banks); *American Express & MasterCard International, Inc.*, 2000 WL 34538137, at *1 (identities of taxpayers not readily available except from American Express and MasterCard International, Inc., who possessed credit card information for cards issued by offshore banks).

The only entity possessing complete information relating to payments made by JustAnswer to its Experts, that identify the Experts and the relevant amounts paid, is JustAnswer.  Therefore, it is logical to summon JustAnswer for identifying and payment information about its Experts, which is not readily available from any other source.

> 4.    *The Summons Is Narrowly Tailored to Information that Pertains to the Failure (or Potential Failure) of the Class to Comply with the Internal Revenue Laws*

For the reasons described above and in Agent Wood's Declaration, the IRS has established the three statutory prerequisites for issuance of the summons.  26 U.S.C. § 7609(f)(1)–(3).  Additionally, the IRS may issue the summons because each of the items requested is narrowly tailored to assist the IRS in investigating the unknown members of the John Doe class for their failure, or potential failure, to comply with the internal

revenue laws, specifically their obligation to file an income tax return with the IRS reporting the payments received from JustAnswer in income. *Id*. § 7609(f).

The requirement that a John Doe summons be "narrowly tailored to information that pertains to the failure (or potential failure) of the [John Doe class] to comply with one or more provisions of the internal revenue law" was added to 26 U.S.C. § 7609(f) to ensure that "the information sought in the summons [is] at least potentially relevant to the tax liability of an ascertainable group," and that the summons is not used "for the purposes of a fishing expedition." H.R. Rep No. 116-39, at 41 (2019). The provision "is not intended to change the *Powell* standard [i.e., the showing the IRS must make in support of summons enforcement] or otherwise affect the IRS's burden of proof."7 *Id*. at 42; *see also* Joint Committee on Taxation, *Description of H.R. 1957, the "Taxpayer First Act of 2019*," at 15 (2019) https://www.jct.gov/CMSPages/GetFile.aspx?guid=673878f4-0d0f-4304-a14c-c9740276676a [https://perma.cc/49QV-GWV6].

The "narrowly tailored" requirement is satisfied here. Agent Wood's Declaration explains the direct connection between each of the five items requested in the summons attachment and the IRS's investigation into non-compliance with the internal revenue laws. *See* Declaration ¶¶ 126-134. Those five document requests fit within two categories. The first category of requests is directed at adequately identifying the John Doe Class members so that payment data can reasonably be linked to a particular person. *Id*. ¶ 127. For example, Request No. 1 on the summons attachment, seeking the expert application and account records, will assist the IRS in this process. *Id*. ¶ 129. The second category of requests is directed at obtaining payment information that may permit the IRS to evaluate whether a particular taxpayer complied fully with internal revenue laws. *Id*. ¶ 128. For example, Request Nos. 3 and 4 on the summons attachment seek all records of account activity, including the crediting of payments, payments of bonuses and premium fees, and all records of payments. These records should contain the information necessary to help the IRS determine the correct federal tax liability of the John Doe class members. *Id*. ¶¶ 131, 132.

Thus, each of the items sought by the summons is targeted toward obtaining information that may further the IRS's investigation of the John Doe Class and its members' failure (or potential failure) to comply with the internal revenue laws. The narrow-tailoring requirement is therefore satisfied.

**IV.    CONCLUSION**

For these reasons, the United States' petition to issue the summons should be granted.

Dated this 10th day of December, 2024

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Amy Matchison*
AMY MATCHISON
Trial Attorney, Tax Division
U.S. Department of Justice